We'll proceed to the next case, United States v. Johnson. And on this case, we'll hear Ms. Beshara. Good morning, and may it please the Court. Jacqueline Beshara for the United States. In 1999, the defendant was sentenced to life for his role as the leader of a violent drug trafficking conspiracy. If he were sentenced for his crimes today, he would still be subject to a mandatory life sentence. For that reason, the district court abused its discretion in finding extraordinary and compelling reasons to reduce his sentence based on intervening changes in law and policy that have no practical effect on his sentence, as well as based on the disparities between his sentence and the sentences of his cooperating co-conspirators. Because his remaining claims do not rise to the level of extraordinary and compelling, the court should reverse. In this court's cases, where the court has upheld the finding of extraordinary and compelling reasons based on intervening developments in law, the crux of the court's reasoning was that the change in law would have some effect on the defendant's sentence if he were sentenced today. We think about cases like McCoy and cases like Brown. But here, turning first to the 924C sentences, the district court relied on two intervening changes. The First Step Act's amended penalties for multiple violations, as well as the Robinson Memo. But regardless of how those changes might have affected the four consecutive 924C sentences, they have no practical bearing on the sentence the defendant would actually serve because those run consecutively to two life sentences, one of which remains a statutory mandatory minimum today. For similar reasons, the fact that the defendant was sentenced before Booker under the mandatory guidelines is not an extraordinary and compelling reason to reduce a statutory mandatory life sentence. In other words, even under the advisory guidelines range, the district court would have no discretion but to impose a life sentence for the Vicar murder conviction. The district court gives a bunch of reasons why he granted the relief in this case. The government doesn't say because there's a mandatory life sentence that compassionate relief was not available. No, that's not our position. So that mandatory minimum isn't a bar. So why isn't the factors that the court considered enough that the court's acting within its discretion? Our position is that if a defendant could establish proper, extraordinary, and compelling reasons, certainly the statute authorizes a district court to reduce even a statutory mandatory minimum sentence. The problem here is that even McCoy says the defendant still has to meet that statutory standard of extraordinary and compelling reasons. Is your argument a categorical one that if the defendant would be sentenced under the same thing today that that's a categorical bar to extraordinary and compelling circumstances? I hope I'm not making a categorical argument. I'm saying that in this case, these sort of intervening developments that he has identified are not extraordinary and compelling with respect to his sentence. If you look at the text of 3582C1A, it contemplates that the extraordinary and compelling reasons are going to be tied to the term of imprisonment that is reduced. And here, there's simply no connection between all of these things that he has identified and the life term on count five. That's the problem. That's the issue or our problem with the district court's analysis is that they're all sort of tangential to count five. But back to the statutory language, I understand your argument. I get it completely. I guess I'm just trying to figure out how we know, what's the rule we're doing here? I mean, extraordinary and compelling circumstances, if your argument isn't that there is no practical effect of the change and therefore you can't have it, I guess, why is it not appropriate to consider it? I'm not saying that the district court couldn't consider it. I'm saying that it doesn't satisfy the language of extraordinary and compelling. The five other circuits that have interpreted just the plain statutory language since those words aren't defined in the statute have said, we give these words their plain meaning. So extraordinary has to mean something that's unusual, that is not common, that lacks precedent. And I offered the analogy in our briefing of cases where the court has said, okay, even problems, defects in consecutive 924C sentences, either on direct appeal or for defendants seeking 2255 relief, the court doesn't disturb those sentences because the reality is that the defendant is never going to serve those consecutive 924C sentences because he will be serving his life sentence. That's the point that I'm trying to get at here. In other words, you're saying that he receives 790 months imprisonment consecutive to his life sentence and that the elements of the compassionate release argument are addressing the 790 months and not his life sentence. Exactly. Yes, you've said it better than I could, Judge Niemeyer. Does that change the discretion of the court? The court has discretion to grant compassionate release, correct? Within the statutory language, yes, Judge Gregory. Within the language. The language is in terms of whether or not the court feels there's extraordinary circumstances, right? Right. The court has discretion, does it not? We can't have it both ways. When the court says you don't get it, that's fine, but now when the court in a rare circumstance is granted, now it's picked through, it's wrong now, it's different, the goal post changed. The court gave compassionate release here. Why is the government, it's like Shakespeare would say, don't protest too much. You said it doesn't mean anything, so why is the government here? It must have meant something. The court felt there was something there, that compassionate release in terms of compassionate consideration was important. If it wasn't, why are you here? It means nothing. Why is the government wasting time for the court to be here if it meant nothing to him? I certainly don't mean to waste the court's time. Is your argument saying that this doesn't matter? No, not at all. It did matter, didn't it? It does matter. Certainly, it mattered to the victims of these crimes. We know the victims of the crimes. Compassionate release, no. Compassionate release was not there because something wasn't done wrong. It's released for compassionate release, for reasons. Yeah, but does it mean something? I thought you were saying that it didn't make any difference in this case at all to what time he would ultimately spend. Are you saying that? No, you're not saying that, right? Yes. Yes, what? The reasons that he identified have no practical relevance to the sentence he will serve. The reason the government is here is because we maintain the district court abuse discretion in finding extraordinary and compelling reasons. We know from McCoy that, yes, the district court has discretion in assessing a motion for compassionate release, but that discretion is bounded by the terms of the statute, which is a limited sentence modification statute. I can address briefly the claim about co-defendant sentence disparities, if that would be helpful. It's well established in the Supreme Court's and this court's case law that defendants who plead guilty and cooperate with the government are simply not similarly situated to defendants who go to trial. For that reason, comparing those two categories of defendants is like comparing apples and oranges. This court, in at least one unpublished decision, two circuits in published decisions have recognized that this kind of claim of sentence disparity between a defendant who went to trial and his co-conspirators who pleaded guilty is not an extraordinary and compelling reason for a sentence reduction. We maintain that the disparity between Mr. Johnson, the Perante twins, and Eldon Brown is not unwarranted. Because they cooperated, they provided substantial assistance. On direct appeal, this court would say this is not an unwarranted sentence disparity, and so we maintain for similar reasons this doesn't rise to the level of an extraordinary and compelling reason to reduce his sentence. Counsel, we may be bound. You mentioned the cases that you talked about. I think you're right on that. It does strike me as odd whether we can do anything about it, though, that a defendant exercises a constitutional right to have a jury convict him beyond a reasonable doubt, and therefore he's legally in a different place. That may be foreclosed by precedent, but do you have a view on that? I appreciate the court's concern. Sorry to interrupt you. I appreciate the court's concern, but again, the Supreme Court and this court have made clear that's an ordinary feature of the trial and sentencing process, and it would be quite disruptive to now use post-conviction motions to upset settled expectations about plea bargaining and cooperation. This would disincentivize defendants from cooperating with the government, and as I'm sure you can imagine, especially in cases like this where you have underground drug trafficking and crimes of that nature, our case depends on our ability to secure cooperation. If defendants know that that's going to be a basis to get a sentence reduction, or I'm sorry, not cooperating is a basis to get a sentence reduction, I mean, that upsets normal incentives in the criminal justice system. I would strongly urge the court not to uphold the district court's ruling on that front. The last aspect that we have to cover are the defendant's age and rehabilitation. As we stated in our brief, once you strip out the improper factors, we maintain that those are not enough to meet his burden of establishing extraordinary and compelling reasons. His age was relatively common for defendants convicted of violent offenses at the time, and of course he was not a juvenile when he committed these crimes. And then his rehabilitation, although it could factor in as one among other factors here because the other factors are really not proper considerations, that can't meet his burden in this case. Is that it? Hearing no further questions, I'm happy to reserve the remainder of my time. All right. Thank you. All right. Mr. Wenstrup. May it please the court. Good morning, Your Honor. My name is Nathaniel Wenstrup for Mr. Shaheen Johnson. After multiple rounds of briefing and hearing in court . . . Could you keep your voice up, please? We're across the room. Thank you, Your Honor. After multiple rounds of briefing and hearing in court from a victim's family, from Mr. Johnson's daughter, Mr. Johnson himself in counsel, the government . . . I'm sorry, the district court in a 32-page opinion reduced Mr. Johnson's sentence to 35 years. Obviously, this court refused these compassionate release cases for an abuse of discretion. And while I was going to use the terms arbitrary, irrational, and unreasonable, I think I'll invoke the court's language that the court would really have to find that the district court went off the deep end in this case. It did not. This is not a resentencing like under . . . Well, the question is, I think everything was properly before the court, but the core reasons were the circumstances have changed. Their stacking was changed. Booker was changed. And let's grant those. Those would then reduce the 790 months. The government's position is, okay, take away all the 790 months. Don't just reduce it. You can even take it away. It's immaterial to the fact that the sentence remains, the unattacked sentence remains today mandatory life imprisonment or death. Those are the two options only that Congress gave for this crime. And the lower end of that requirement is mandatory life. Now, the question is if that sentence was not attacked by Booker and stacking and so forth, then the court shouldn't rely on factors addressing the other sentences, the stacking in order to reduce a sentence that was not changed and clearly not changed and is mandatory. That's the government's position. And so it's really sort of firing your weapon, proper weapons, but you're aiming at the wrong thing. So I appreciate that, Your Honor. I think that, as Your Honor says, I think the court was very specific in outlining its methodology, that it looked at the subsequent changes in the law as extraordinary and compelling reasons to reduce those sentences. Then it moved on to count five. And while I believe the government is saying that they're not asking for a categorical rule, really what they seem to be arguing for is a categorical rule. It doesn't matter how you call it. The question is the attack didn't go to that sentence. That sentence remains the same. Yes. The sentences that could be reduced if presented and discretionary exercises were the 790 months. And the 790 months, the government says it doesn't matter how much you want to reduce it. If the court wants to reduce it, fine. He still gets the mandatory life, which was not addressed by those factors. That's what Congress is demanding. And so the reduction of a mandatory life sentence has to fit the criteria set forth in the statute, not the other sentences. That's the argument. And I'm not sure. It's just it's not the improper factors. It's the misdirection. It's applying factors that normally can be considered in compassionate release, but it's applying them to sentences that are immaterial in this case because it's hard to serve 790 months after you've served a life sentence. I completely agree, Your Honor. But I think that the district court was clear in its methodology that in looking at count five, the mandatory life sentence, that's where it was looking at three sentences . . . I'm sorry, three factors that were absolutely permissible and relevant. It was looking at the sentencing disparities. It was looking at the role of youth in the conduct here. And it was looking at rehabilitation. And I think count five specifically . . . It really comes down to rehabilitation, doesn't it? Because the youth, he was 24 years and 10 months. And the argument you would make is he's not mature until he's 25, two months later. I mean, if you based elimination of a life sentence, a mandatory life sentence, on the nature of what people believe the maturity of a brain is, that in and of itself would . . . So you're really left with a serious contention on rehabilitation. That's a good contention. But the question is now both Congress has indicated you can't rely on retention. You have to have other factors, rehabilitation. And case law says that, too. That's pretty universal. It's a factor that may be considered, but it doesn't justify it. Yes, Your Honor. And I think the government did not seem to contest at all . . . No, that's right. . . . that rehabilitation was extraordinary. Yeah. And in terms of . . . I think the record demonstrates it. I think there is that.  And I must say, just as I've said many times in different contexts, I think there is a lot of glory for prisoners who genuinely redeem themselves in prison. I think they deserve a lot of human praise and commendation, and they should be encouraged. The question is, to what extent do we change the laws that are applicable to their crimes? And it's a factor, but . . . Yes, Your Honor. And we're very glad for the rehabilitation, I must say. Thank you, Your Honor. And I think that it's also of note that the rehabilitation came here after all of his appeals were up, when he essentially had no hope of release and kind of showed himself to be a new person. So, counsel, can I try to dig into this a little bit? Do you . . . It sounds like you're recognizing that the changes, that the booker changes, the memorandum changes, and the stacking wall changes. I want to see if I'm understanding you right. Do you agree that those are not extraordinary and unusual circumstances with respect to the murder conviction? With the mandatory life? I think that what . . . I think . . . Yes, I would agree that they are very far from the prime drivers. I think in the court's reasoning, I think what it's saying, in my reading, is that those subsequent changes in the law are subsequent, are extraordinary and compelling reasons for the 924 season and for count two, and because of the ambiguity, the booker application there. I think that when the court is looking at count five, it's really looking at the extraordinary and compelling reasons being sentencing disparities, the youth at the time, and rehabilitation. And I think it's important to take a look at the specifics of count five because there, Mr. Johnson got a mandatory life sentence for his involvement in the death of Mr. Villa. And I think the jury specifically found that he had a relatively minor role in the death of Mr. Villa. And so I think those facts . . . But that is way beyond the sentencing court's discretion of any kind. Once the jury finds a violation of count five, the court is bound. Oh, absolutely, Your Honor. And so we can't argue whether the jury justified it or whether that's a mitigated sentence. I mean, that sentence cannot be changed. You have to acquit him to get him out from under that. I completely agree, Your Honor. I think, first, the Congress did not exclude any statutes of conviction from compassionate release, including 1959, including anything else with mandatory life. I think that that is a very important note, and that open-ended look at compassionate release is really our starting point. But if I could just kind of finish my little effort to get this straight in my head. If it's correct that changes in Booker, changes in 924C, and the DOJ memorandum aren't extraordinarily unusual with respect to the 1959 conviction, it seems like you almost have to say that. I mean, if you look up the definitions of extraordinary and compelling, it would be kind of hard to say they are there. So then we look at a reduction, and I take your point. I would ask your colleague the same thing, that it's not like 1959 is immune from compassionate release. But we're looking at disparity. That butts up to some pretty compelling case law. So can you really do disparity when case law talks, when we have this situation about folks who cooperate? I raised a concern about that, but that precedent's there. And you have age and rehab. Is it, I guess, your position that those are extraordinary and compelling circumstances, those three factors? I think so, Your Honor, and I think that the district court here did a very thorough examination of the record and case law in looking at those three factors, and I think that there was ample evidence in the record to support its findings. I think starting with disparities, I don't think that the disparity case law is specifically with regard to looking at compassionate release under 3582. Let me ask you a legal question, a purely legal question that arises from Judge Quattlebaum's question. Disparity, you seem to think that disparity could be addressed with respect to the life sentence. My question is, if the other persons in the conspiracy were not charged with a Section 1959A violation, and this man was charged, and the jury convicted him, during sentencing, they could never consider that because there's a mandatory minimum sentence, right? Life sentence was mandatory. There's no other sentence offered. Correct. And so you're comparing a conviction under a statute which imposes a life sentence with a defendant who was convicted under some other statute and got much lesser offense. That's the comparison you're trying to create. Yes, Your Honor, and I think the court is looking at their relative . . . If that person were charged with the same offense, he would have received a life sentence, right? The comparator. If he was convicted of the comparator, yes. So isn't that fatal as a matter of law? In other words, how can we consider disparity of sentences when Defendant A is charged of a totally different offense than Defendant B? Defendant B is charged with the offense that Congress said they have to serve life imprisonment, and there's no discretion for the court to give him a term of years. And A, the guy was charged with some other offense which allowed for a term of years, and the court gave him a lot of credit for cooperation. How can we call either of those disparate in those circumstances? Because I think that when we're looking at disparities in the 3582 context, like in McCoy, we're looking at . . . We're in original sentencing now. You're standing before the court because disparities are part of the 3553 unwarranted disparities. So my question is, you argue that this man should not get a life sentence. He's been convicted. He should not get a life sentence because another member of the conspiracy got X years, 10 years of 20 years. I don't know what he got, but . . . And the government comes back and says, but the other man was charged with a different offense, not with a section 1959 offense. If he was charged with a 1959 offense, he would also have gotten it. So how do we compare one defendant charged with one crime and another defendant charged with a different crime? Where the mandatory minimum is life. Correct, Your Honor. And I think that the reason is because this is not the original sentencing in 35 . . . No, I know. I'm staying in original sentencing now. My hypothetical is original sentencing, and the question is you stand there and argue for the district court disparity. Your guy got life, and the other member of the conspiracy got 10 years. Your Honor, I think . . . Could you make that argument? Well, I think that, one, I don't think I could make . . . Any argument like that's going to fall on deaf ears because of the mandatory life sentence. Even making that . . . It's not deaf ears. It's a question of legally, isn't it? Correct. I'm sorry. Is it legally? Legally, no. It's not going to go anywhere because there's a mandatory life sentence. Also, at that point, when we're talking about . . . I think the case law is different about considering disparities at the original sentencing. So, Your Honor is right. At the original sentencing, I would certainly get up and talk about the unfairness of the fact that Mr. Brown, who killed Mr. Villa, got a five-year sentence for being the trigger man, for shooting and killing Mr. Villa, and that Mr. Johnson . . . What did they charge him with? I believe he was charged . . . He received . . . What is he charged with? What statute? He was charged with a 924C. All right. So, 924 . . . He's got a 924C, and we have a 1959. Correct. 924C is changed. He could even make an argument that he got too much because the law has changed under 924C and stacking definitions of crimes of violence. 924C has really been amorphous. We get a lot of 924C stuff. Yes. But to make an argument then or now that a 924C conviction, sentence for a 924C conviction is disparate from a 1959 conviction, is a nonstarter, isn't it, as a matter of law? I think at the time . . . And now. And now. I think that this case . . . I'm sorry. This court has affirmed several . . . in several decisions, has affirmed district courts where they have considered the sentences and relative culpabilities of co-defendants as part of the 3582 consideration. That is what we're asking here. Different statutes of conviction? I apologize, Your Honor. I don't have that off the top of my head. And cooperation? I think while there is . . . I think that the district court here did a very detailed look. He looked at cooperation. He looked at charges and convictions and sentences and looked at relative . . . I understand that. My only question is a matter of law. The whole disparate analysis is irrelevant because the law binds us to life for the one person and allows a lot of discretion to move around on the other conviction, which was not only a conviction of a different statute, but a conviction of a defendant who helped the government prosecute the entire operation, which involved five murders and a lot of underground drug dealing and so forth. It was a serious . . . it's a serious crime. And so the question is once, as a matter of law, once you have two persons where one is 924C and the other is 1959, can you make a disparate argument as a matter of law? And I'm not sure you can. I don't know if you have any case that does that. I think in the 35 . . . I don't think that there is any case law preventing this court from doing so or preventing the district court from using its discretion that way in the . . . Let me ask another legal question along the same line. That's the answer right there. The answer to the question is right there. There's nothing that prohibits it. I think, Judge, if I could ask a question, one. The question is the compassion release is extraordinary. It's nothing . . . there's no case law that says you can't . . . Judge, neither am I asking you, well, if he's charged with it, and obviously he can't get more than that. The question is you look at the whole idea. You talk about the trigger man. No matter what they charged him with, the disparity in the extraordinary situation is, look how little he got versus this person. There's nothing that prevents the court from looking at compassion release. That's the issue. It's not apples and oranges, what you're being asked for, in terms of there's no case that says that. Amazing how all these guardrails come up when the court grants it, but nothing comes up. You just say it, and it's fine. Yes, Your Honor. I think as the Supreme Court said in Concepcion, the district court has vast discretion to consider basically anything that is not excluded by Congress. I think Congress, and again, neither Congress nor the case law have excluded consideration of this kind of disparities. That's why I think the district court did so and really dove into all of the facts. They also looked at the average sentences. I believe there they also considered the letter of Judge Lee. I think that's relevant in the disparity context because Judge Lee had seen the trial. Judge Lee had seen all of the sentences. He had seen the relative culpabilities. He wrote saying that this sentence was excessive. Can I ask you something, counsel, about what I was exploring earlier? You, I think, are arguing that disparity, youth, and rehabilitation are sufficiently within the court's discretion to justify the reduction as to the murder crime. Where is it that it's clear to you, if you don't mind pointing me, that the district court was looking at only those factors and not all the factors together? I was looking back at the order during this, and I may not be as familiar with it right now, but it's not apparent to me that that one reduction is based on those three factors. Quite frankly, it looks to me like it's based . . . but everything else looks like it's a totality. I wonder if we're not in a situation where maybe we could do one thing if the court has said the 1959 reduction is for these three factors and we could debate whether that's within the discretion. I don't see in the order where it did not consider the things that had no effect on the murder conviction in reducing that one. But I may have missed it, so please help me if I've missed it. Your Honor, I was looking at Section I of the original . . . Can you give me the J page? I can. But I think that . . . I? I apologize. That's all right, I'm there. I'm at I. Here, and I think that the court is kind of walking through it. Rehabilitation, relatively young, and I think that there . . . he kind of talks about those as totality. I think he, as Your Honor says, he mentions Booker in count two, and then I think he's kind of . . . there goes from . . . he goes into sentencing disparities, and then finally the last section is he's addressing 924C and kind of talks about those and reducing those sentences on that basis alone. So there might be wiggle room there, Your Honor, but I think my reading is that he was looking at the subsequent changes in the law. Do you agree it would be improper to consider Booker the 924C reductions and the DOJ memorandum as extraordinary circumstances, at least to the murder conviction? I think going back to Judge Gregory's question, I don't think that anyone has ever made that limitation, but I think that, to me, it seems like the thrust for count five is the disparities. Fair. I mean, in the sense no one said those specific words, but Congress has said it's got to be extraordinarily compelling, and I think we . . . I don't want to repeat our dialogue earlier, but I think you've all but said those aren't compelling, at least as to that count. So, yeah, we . . . Congress doesn't list out all the compelling and non-compelling reasons, but that is a requirement. That's correct, Your Honor. And I think one of the things that we have here is this court . . . this district court has seen hundreds of compassionate release motions. It has seen rehabilitation. It has seen young men being sentenced. It has seen sentencing disparities, and it found these to be extraordinary and compelling. And while I'm over time, I would just ask to speak briefly to youth and the role of youth, because I think Judge Niemeyer did mention youth, and that is a factor, but I think that the court spent a lot of time here really looking at the role of youth in this offense, because obviously youth is not a bright line, and it never has been. And I think looking at the defendants in McCoy, those defendants were 19 to 24 years old. Here, the conspiracy started at 20 and ended at about 24, 25. But I think the district court identifies that really the role of youth begins much earlier, where Mr. Johnson was abandoned by his father. His mother was a heroin addict. He was in and out of the foster care system. He was abused and molested as a child. He was robbed repeatedly while trying to . . . Yeah, but they don't normally consider that as youth. That's for other factors maybe, but the youth would be at the time he committed the offense under consideration. I mean, if he had all that and committed this crime at age 32, we wouldn't even be talking about youth. We're talking about his background, but the crime committed at 32 is a decision of a mature man. So the question is here, the 1959 was committed when he was 24 years and 10 months old. And the question is, is that a significant youth factor to be considered? And I think that the district court, again, at length, reviewed how . . . when we're talking about the 32-year-old, there's a lot more time in between, whereas this individual, Mr. Johnson, was basically . . . had no one left by the time he was 16 or 17. He was fending for himself. Several years later, he begins involvement in the conspiracy. And I think the court . . . So the court took all that into account, thinking about his youth specifically as a role . . . and its role in this offense. And I think it also looked at his subsequent rehabilitation as affirming that immaturity in youth really played a role here. In addition to that, the district court looked specifically at research by the Sentencing Commission and case law from this court talking about the youth and the role of youth and how, you know, as Your Honor alluded to, the science is showing a longer progression of when there really is immaturity. But I think that the district court went to great lengths to show that this is not . . . there's never been a bright line rule on youth.  You've got some more time. No, you don't. We've gone through the red light. All right. Any further . . . No, you want the court to be affirmed. Thank you, Your Honor. All right. Ms. . . . All right. Okay. I have just three points in rebuttal. First, Judge Quattlebaum, you correctly noted at JA 715 to 716, the district court has never said that it would find extraordinary and compelling reasons to reduce the life sentence based solely on the co-defendant sentence disparities, age, and rehabilitation. That error alone warrants reversal, if not vacator and remand. Why is that? Let's assume . . . let me just ask you this. Let's assume the district court had segmented these things out differently and said, I grant compassionate release for the term he did for the 1959 based on the disparity, the youth, and the rehabilitation, and given the long explanation for that. Would you say that's an abuse of discretion? On the facts of this case, yes, Your Honor, and I can turn to . . . those are actually my second and third points, so that fits well. Going back to the question about co-defendant sentence disparities, if you look at this court's cases, and of course these arise on direct appeal, but cases like Jeffrey and Susie, those involved similar claims by defendants who went to trial and argued that their co-defendants who pleaded guilty were in some respects more culpable than them. Either they had a higher role in the criminal organization, or they earned a greater share of the profits of the criminal scheme, and so they said, really, this is an unwarranted sentence disparity, and still this court has repeatedly said, no, notwithstanding these claims of diminished culpability relative to the cooperating co-conspirators, that's still not enough to establish an unwarranted sentence disparity. If that is the principle on direct appeal, there's no reason that that shouldn't apply with equal or greater force when we're in a post-conviction posture. But you have no case that says that it can pass to release. Do you? Well, this court's decision in Melvin . . . Do you have the case? Melvin said what? Melvin recognized that co-defendant sentence disparities did not rise . . . Was that an affirmance of the district court? Yes. Right. This is . . . Well, you asked me for a compassionate release case, and that's one . . . Yeah, but not where it was granted? No. The motion was denied, and this court affirmed the denial. Give me a case where it was granted, and this court reversed it, reversed it. It was granted. Compassionate release was granted, and this court reversed it. I don't know of a case that this court has confronted. However, I would note two published opinions from other courts of appeals that have confronted the precise same issue. The Second Circuit in Fernandez, the Sixth Circuit in Hunter . . . When you say the same issue, what issue? Co-defendant sentence disparities in a grant of compassionate release, and both of those courts reversed the grants. Did you have a district court who tried the case helping or supporting that disparity? The Judge Lee's letter? In those cases? Those cases did not involve a letter from the sentencing judge. But this is extraordinary, isn't it, that a judge would say that? Trial judge. Who handled the case? Respectfully, Your Honor, the district court considered Judge Lee's letter with respect to the Booker argument, and our position remains that regardless of the personal views of the sentencing judge, it's not an extraordinary compelling reason . . . Or regardless of the views. Because even if he had to impose sentence today, he would be required to impose the mandatory life sentence. We know that from Robinson and Chavez. But that's the whole point of compassionate release. But he doesn't have to now because that's why we have compassionate release. It's not a de novo resentencing, Your Honor. He has to establish extraordinary and compelling reasons. Well, I think Judge Niemeyer wrote high. I mean, it talks about a lot of discretion of the district court. In other words, in the sense that looking at it and making a determination . . . You read high? What limitation do you see at all in high in terms of district court's discretion? I didn't see any. Do you? None. Use of discretion classically formulated is . . . No, no, no. . . . an arbitrary or improper application. You're trying to put a guideline now. You have no case to support just because you don't like that in a rare case that the judge . . . That's not correct. I've cited it . . . Excuse me. Let me ask the question first. You now, because the court granted it, now you're trying to find guardrails. But, they don't exist in the precedent of this court, of this Fourth Circuit. That's what I'm saying. It's extraordinary. It is. Consideration in terms of what the person . . . Isn't that extraordinary in the sense that the person who's . . . Is it my wrong that the person who killed the person got how many years? Eldon Brown received 60 months. Sixty months. And, this person got life mandatory, right? Yes. And, you don't think that could be the basis of a compassionate release that the court . . . You don't think so. But, there's no case law at all that says that the court is restricted from that. Is it? I offered the court three cases. I understand that you might disagree with them. You're right. Again, you're here because you disagree with it. It's like the other case. It was the defendants that disagreed with it. But, the disagreement is not enough, is it? We maintain this was an abuse of discretion because the defendant did not meet the statutory threshold for a sentence reduction. I see that I'm over my time. Okay. Thank you. Thank you. We ask that you reverse. All right. We'll come down to Greek Council. Is it okay to proceed to the last case? I'm good. Marvin, would you like to . . . I'm good. Whatever you all want to do. We'll come down to Greek Council and proceed to the last case.
judges: Paul V. Niemeyer, Roger L. Gregory, A. Marvin Quattlebaum Jr.